UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHIRLEY ANN SLOMINSKI, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GLOBE LIFE INC., a Delaware registered corporation, and UNITED AMERICAN INSURANCE COMPANY, a Delaware registered corporation,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Shirley Ann Slominski ("Plaintiff Slominski" or "Slominski") brings this Class Action Complaint and Demand for Jury Trial against Defendants, Globe Life Inc., ("Defendant Globe Life" or "Globe Life") and United American Insurance Company ("Defendant United American" or "United American") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by placing calls to consumers with numbers registered on the Do Not Call Registry ("DNC") without consent, including consumers who have asked Defendant to stop calling. The Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Slominski, for this Complaint, allege as follows upon personal knowledge as to herself and her own acts and experiences, and, as to

1

all other matters, upon information and belief, including investigations conducted by her attorneys.

## PARTIES

1.      Plaintiff Slominski is a resident of Sunset Beach, North Carolina.

2.      Defendant Globe Life is a corporation registered in Delaware, and headquartered at McKinney, Texas. Defendant Globe Life conducts business throughout this District, and the rest of the U.S.

3.      Defendant United American is a corporation registered in Delaware, and headquartered at McKinney, Texas. Defendant Globe Life conducts business throughout this District, and the rest of the U.S.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over the Defendants because the unlawful conduct giving rise to this case was directed by the Defendants into this District and because Plaintiff resides in this District.

6.      The venue is proper under 28 U.S.C. § 1391(b) because the solicitations at issue were directed by the Defendants into this District.

**INTRODUCTION**

7.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

8.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9.      By 2003, due to more powerful robocalling technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12.     According to online robocall tracking service "YouMail," 5.0 billion robocalls were placed in February 2023 alone, at a rate of 161.1 million per day. www.robocallindex.com (last visited April 20, 2023).

13.     The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

16.     Defendant Globe Life is an insurance company that sells insurance packages to consumers throughout the U.S. through its subsidiaries, including Defendant United American.[3]

17.     The Defendants both solicit business from consumers using solicitation calls to sell their respective insurance packages and sometimes both companies will telemarket to the same consumer like in this case.

18.     Numerous Global Life employees have posted complaints regarding the cold calling that they had to engage in order to generate business, including:

**not a good ideaa**

Licensed Insurance Agent (Former Employee) - Wichita, KS - March 10, 2023

During the week you drive all around the state/s with your own gas. Cold calling 80+ dials on Mondays is a MUST or you are reprehended. You are the book keeper for your clients. You are the claims specialists for each of your clients. Every business or client you speak with has your personal number to call at any times of the day/night. when/if you reach an SA position, you MUST give all your commissions to them for a small portion to be separated for yourself at a prorated rate. You put all of your personal money into this with little in return. They hook you with BIG checks, but do not help you get them, and they are rare when you do receive them. [4]

**2.0**    **Cold Calls**
★★☆☆☆

Insurance Agent (Former Employee) - Tampa, FL - May 16, 2022

*It was not a fun place to work.* Cold calls over and over and over again. They would make us call the same people sometimes 3 to 4 times a day. Its hard to make money there.

5

---

[3] https://en.wikipedia.org/wiki/Globe_Life
[4] https://www.indeed.com/cmp/Globe-Life/reviews?ftopic=paybenefits
[5] https://www.indeed.com/cmp/Globe-Life/reviews?ftopic=wlbalance&start=40

## 1.0

★☆☆☆☆

## A lot of information at once. Most people aren't interested. Cold calling all day

Insurance Agent (Former Employee) - Texas - February 2, 2022

I was an agent for a few months in 2021. It was brand new to me and just wanted to try something out with a flexible schedule so I could live my life more. Going into this I was already not so much a people person, so knocking on random doors seemed a bit unnerving already. I always felt like I was bothering people.
Also, you create your own hours but when I was field training, the agent training me told me that it's good to be out for 12 hours at a time to make as many contacts as possible. *That doesn't sound like a flexible schedule if the work takes up my entire day.* It just wasn't for me, something about it feels disingenuous. Most people told me every time that they already have insurance and they're not interested. You can't force people to buy something they have no interest in. It just wasn't the right career path for me

6

## Get paid based on what you put in

Sales Professional (Current Employee) - Freeport, FL - February 25, 2023

The team and culture are top-notch. If you work hard, the company throws money at you. If you don't like to cold call, this is not the job for you. There is plenty of self generated opportunity.

✓ **Pros**
People, *compensation*, trips

✗ **Cons**
Cold calling                                                                                     7

---

[6] https://www.indeed.com/cmp/Globe-Life/reviews?ftopic=wlbalance&start=60
[7] Id.

## 1.0

★☆☆☆☆

## Great Potential for a Heart Attack

Career Agent (Former Employee) - Denver, CO - January 26, 2022

I was on my last few bucks when I got my license to sell life insurance to local companies. *In that time I was forced to make cold calls all over the state and then over the course of the week, drive to said places.* I could not make a sale to save my life and always felt shady when I was told to not use my real name when making cold calls. I felt like this was an MLM. I ended up developing a type of arthritis in my ribs that was all because of the stress.

8

## Highly self motivated

Agent (former employee) (Former Employee) - Iowa - September 15, 2022

This job has the potential to be amazing but in this economy with ridiculous gas prices this has been a terrible experience for me. I enjoy meeting new people but cold calling is demanding, stressful, and requires a unique person who has savings to live off of or supplemental income.

✕ **Cons**

100% commission, no benefits

9

### It's direct sales and cold calling.

Apr 1, 2022 - Sales Professional in Raleigh, NC

◯ Recommend    ✔ CEO Approval    ◯ Business Outlook

Pros
Great training, great network of people, great products, cool trips.

Cons
It's literally just cold call, business to business to business selling cancer insurance. The territories are very hit or miss and good luck if your assigned territory is a miss. You are considered self-employed and it is 100% commission so no benefits or anything like that and you either sell policies or make no money.

Advice to Management
Although the training is robust, a formal mentorship program within the company would be greatly beneficial. There were so many people, like me, that had a decent start but were slowly beaten down over time by the nature of the job and felt like there wasn't much support other than the AO or Team Leader saying "keep going".

10

---

[8] https://www.indeed.com/cmp/Globe-Life/reviews?ftopic=wlbalance&start=60
[9] Id.
[10] https://www.glassdoor.com/Reviews/Globe-Life-Family-Heritage-Division-cold-calls-Reviews-EI_IE134515.0,35_KH36,46.htm

**Great product! Horrible experience.**

Feb 5, 2019 - Insurance Agent in Saint Louis, MO

❌ Recommend   ✓ CEO Approval   ❌ Business Outlook

Pros
*Great products
*Meet many new people
*Pay if you can sell policies
*Most people had positive attitudes to work with.

Cons
*Training in Tenn. isn't worth it.
*Mentoring is horrible
*Door to Door
*Free Leads is access to a free program to cold calls

Advice to Management
Train your agents better and mentor them until they get at least a few sales on the books. It should be your goal to set them up for success by doing the hard work with them so they have a good idea what it truly takes. Better communication and don't expect in person meetings at the office 3x a week if there is no base salary. It was a lot of waste of gas, time and effort ultimately. [11]

**cool idea but very specified**

Jan 31, 2022 - Anonymous Employee in Portland, OR

❌ Recommend   ✓ CEO Approval   ✓ Business Outlook

Pros
I think they are good people who want to help people.

Cons
Lots of cold calls, no hourly, commissions start low. It's hard to make a living wage if you do t already know how to sell. [12]

19.     United American Insurance Company employees have posted similar online complaints about cold calling:

---

[11] Id.
[12] Id.

## 1.0

★☆☆☆☆

## 1 star

Life Insurance Agent (Former Employee) - Mobile, AL - December 8, 2022

What is the best part of working at the company?
cool people to be friends with

What is the most stressful part about working at the company?
the bosses do not help you succeed other then repeating themselves 1000x to "just keep calling" after you've done everything you can…. you can go weeks without a paycheck and the bosses still do not care to help you.

***What is the work environment and culture like at the company?***
everyone is really nice to eachother and they are really good at motivating people to be better but still don't do nothing to help.

What is a typical day like for you at the company?
stressful, going from home to home trying to protect that family with life insurance and that one family could either help you get a check or not.

13

Former Employee, more than 1 year

### Typical Call Center Environment

Nov 7, 2014 - Customer Service Representative in McKinney, TX

✗ Recommend    — CEO Approval    — Business Outlook

Pros
If you are looking to get hired quickly, the hiring process is not a long drawn-out process. The location is beautiful.

Cons
Customer service reps earn on a per call basis. This causes reps to rush to get off of their call, so quality of service suffers. Health insurance is expensive. Managers are rude and not knowledgeable about the products offered, and managers look for reasons to discipline employees. In addition, there is little to no room for advancement. It does not pay to have a drive to make a difference in the company, because you are only a low wage employee in the eyes of the management team.

14

---

[13] https://www.indeed.com/cmp/Globe-Life/reviews?ftopic=wlbalance
[14] https://www.glassdoor.com/Reviews/United-American-Insurance-Reviews-E18749_P2.htm?filter.iso3Language=eng

Former Employee, less than 1 year

**I was able to learn a lot.**

Aug 26, 2013 - Insurance Agent in Charleston, SC

✗ Recommend ⭕ CEO Approval ▬ Business Outlook

Pros
The training was excellent and thorough.

Cons
Cold calling and only commissions.

15

---

Former Employee, less than 1 year

**My Perspective**

Apr 27, 2017 - Anonymous Employee

✗ Recommend ⭕ CEO Approval ⭕ Business Outlook

Pros
Risidual income for policies written

Cons
Nothing but cold calls and lies. Travel is out of pocket which is key to success. You are basically an independant business owner but do not have the full actualization of revenue streams

16

20. These solicitation calls are often times placed to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

21. In addition, the Defendants continue to place calls to consumers who instructed Defendants' employees to stop calling them.

22. As a result of the cold calling by Defendants' employees, many consumers have posted complaints online about unsolicited calls they received,

---

[15] https://www.glassdoor.com/Reviews/United-American-Insurance-Reviews-E18749_P5.htm?filter.iso3Language=eng
[16] https://www.glassdoor.com/Reviews/United-American-Insurance-Reviews-E18749_P5.htm?filter.iso3Language=eng

including complaints about calls to phone numbers registered on the DNC and including complaints about receiving calls after telling Defendants' employees to stop calling.

23.     On the Better Business Bureau page for Defendant Globe Life, a consumer filed a complaint stating:

> "Harassment. Too many marketing tactics. *I have requested to STOP via telephone and USPS mail*. *I have requested more than 5 times*. I am all set. Life insurance is in place. Please make Globe Life stop! It's insane. Thank you."[17] (emphasis added)

24.     In addition, telemarketing complaint websites show many complaints about unsolicited calls received from the Defendants, including:

- "This company sends multiple *daily messages even though I have told them I am not interested.*"[18] (emphasis added)
- "want stop calling."[19]
- "Sales call not solicited"[20]
- "*won't stop calling*"[21] (emphasis added)
- "calls everyday"[22]
- "Repeat Nuisance Calls After Completing [Insurance] Application"[23]
- "I get calls from 214-250-5518 claiming to be Globe Life asking for my sister about a request to increase coverage (which she didn't request). They say to call 800-253-8707. We haven't found either

---

[17] https://www.bbb.org/us/tx/mckinney/profile/insurance-companies/globe-life-and-accident-insurance-company-0875-90715683/complaints
[18] https://directory.youmail.com/phone/469-609-2331
[19] Id.
[20] Id.
[21] https://www.shouldianswer.com/phone-number/8006545433
[22] https://callfilter.app/12142505518
[23] https://us.shouldianswer.net/phone-number/2142505518

number on her policy paperwork nor any Globe Life website. They call at least once a day for the last two weeks…"[24]

- "Represents herself as calling for United American Ins. Ask for a person not at this number so I hung up. Caller ID says "Robo-Globe Life"!"[25]

- "Constantly calling every day... Call is blocked by caller id because it shows spam.."[26]

25.     In response to these unsolicited calls, the Plaintiff brings this case seeking injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act by placing calls to phone numbers that are registered on the DNC without consent and failing to maintain adequate policies and procedures for maintaining and honoring do not contact requests, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF SLOMINSKI'S ALLEGATIONS

26.     Plaintiff Slominski is the subscriber and the sole user of the cell phone number ending with 0073.

27.     Plaintiff Slominski registered her cell phone on the DNC on April 11, 2018 and she uses it as one would use a landline telephone number in one's home.

28.     Plaintiff's telephone number is not associated with a business.

29.     In late February, 2023, Plaintiff Slominski called Defendant United American at 844-593-8913 to inquire about a supplemental insurance policy. She

---

[24] https://www.callercenter.com/214-250-5518.html
[25] *Id.*
[26] *Id.*

answered some questions by phone and was told that a licensed insurance employee would call her back in a couple of days.

30.     Plaintiff Slominski received a call from a United American employee, from 844-593-8913 shortly after the initial phone call. She told the employee that she would like to cancel her request for information.

31.     Despite the cancellation of her request, Plaintiff Slominski received a series of calls from Defendant United American to her cell phone number. She called 844-593-8913 at the end of February and made a specific request for the calls to stop, asking to have her phone number removed from whatever list Defendant was using.

32.     Plaintiff Slominski received additional unsolicited calls to her cell phone number from both Defendant United American as well as Defendant Globe Life, including voicemails from both of the companies. Plaintiff noted that she received upwards of 10 calls per day from the Defendants to her cell phone number.

33.     Plaintiff Slominski blocked the Defendants from calling, but the voicemails filled up her phone's memory. Plaintiff had to delete the voicemails to make room for other voicemails.

34.     Plaintiff Slominski noted that she received unsolicited calls from Defendant Globe Life on February 28, March 2, and March 3, 2023.

35. Plaintiff Slominski made an additional stop request to Defendant United American by answering a call she received on March 13, 2023. She was told by an employee that her cell phone number would be put on a 90-day do not call list. Plaintiff told the employee that a 90-day do not call list would not be sufficient and that she did not want to receive any calls at all. The employee then said she added Plaintiff to a do not call list.

36. Despite this new stop request, Plaintiff Slominski received an unsolicited call from Defendant Globe Life on March 14, 2023 at approximately 8:15 AM from phone number 214-250-5780. This call was not answered. A voicemail was left asking Plaintiff to call Globe Life back to get an insurance plan.

37. Plaintiff Slominski also received an unsolicited call from Defendant Globe Life on March 15, 2023 from phone number 214-250-5518. This call was not answered but a voicemail was left asking Plaintiff to call Globe Life back to get an insurance plan.

38. Although Defendant Globe Life is the parent company of Defendant American Insurance, Plaintiff Slominski never provided consent to Defendant Globe Life or had any communications directly with it.

39. The unauthorized solicitation calls that Plaintiff Slominski received from Defendants, as alleged herein, have harmed Plaintiff Slominski in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment

of her phone, in addition to the wear and tear on the phone's hardware (including the phones' battery) and the consumption of memory on the phone.

40.     Seeking redress for these injuries, Plaintiff Slominski, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

41.     Plaintiff Slominski brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendants, or an agent calling on behalf of the Defendants, called/texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason that Defendants called/texted Plaintiff.

> **<u>Internal Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendants called/texted more than one time to the person's residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendants called/texted Plaintiff, (4) including at least once after the person requested that they stop calling and/or sending text messages.

42.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who

properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Slominski anticipates the need to amend the Class definitions following appropriate discovery.

43. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and the Plaintiff is a member of the Classes because she received text messages as part of the same telemarketing campaign resulting in text messages sent to other Class members.

44. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendants' conduct violated the TCPA;

(b) whether Defendants placed multiple calls to Plaintiff and members of the DNC class without first obtaining consent to make the calls;

(c) whether either of the Defendants or an agent called on behalf of either of the Defendants engaged in telemarketing without implementing

adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

45.     **Adequate Representation**: Plaintiff Slominski will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in class actions. Plaintiff Slominski has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff Slominski, and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff Slominski, nor her counsel have any interest adverse to the Classes.

46.     **Appropriateness**: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Slominski. Additionally, the

damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Slominski and the Do Not Call Registry Class)**

47.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

48.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

50. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

51. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

52. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Slominski and the Internal Do Not Call Class)**

53.     Plaintiff repeats and realleges paragraphs 1 through 46 of this Complaint and incorporates them by reference herein.

54.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request

not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

55.     Defendants placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendants to initiate telemarketing calls.

56.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private

action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

57. The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Slominski, individually and on behalf of the Classes, pray for the following relief:

a.) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Slominski as the representative of the Classes; and appointing her attorneys as Class Counsel;

b.) An award of actual and/or statutory damages and costs;

c.) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d.) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e.) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Slominski requests a jury trial.

                                            **SHIRLEY ANN SLOMINSKI**,
individually, and on behalf of all others
similarly situated,

DATED this 22nd day of June, 2023.

                                            Respectfully Submitted,

                                            By: /s/ *Ryan Duffy*
Ryan Duffy
The Law Office of Ryan P. Duffy, PLLC
1213 W. Morehead Street
Suit 500, Unit #450
Charlotte, North Carolina 28208
ryan@ryanpduffy.com
Telephone: (704) 741-9399

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*