IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-1081-D

SHIRLEY ANN SLOMINSKI,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　　**ORDER**
　　　　　　　　　　　　　　　　　　)
GLOBE LIFE INC., et al.,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)

On June 22, 2023, Shirley Ann Slominski ("Slominski" or "plaintiff") filed a class action complaint against Globe Life Inc. and United American Insurance Company ("United") alleging two violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 [D.E. 1]. On August 18, 2023, Globe Life Inc. and United moved to dismiss Slominski's complaint [D.E. 12].

On September 22, 2023, Slominski filed an amended complaint against Globe Life and Accident Insurance Company, Inc. ("Globe") and United (collectively "defendants") alleging three violations of the TCPA and its implementing regulations [D.E. 18].[1] On October 30, 2023, Globe and United moved to dismiss Slominski's amended complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted [D.E. 22] and filed a memorandum in support [D.E. 23]. See Fed. R. Civ. P. 12(b)(2), (6). On December 4, 2023, Slominski responded in opposition [D.E. 25]. On December 18, 2023, Globe and United replied [D.E. 26]. As explained

---

[1] Slominski does not name Globe Life Inc., defendants' parent company, as a party in her amended complaint. See id. Slominski does not bring any claims against Globe Life Inc. See id. Accordingly, the court grants in part Globe Life Inc. and United's motion to dismiss [D.E. 12] and dismisses Globe Life Inc. from this case. The court denies as moot the remainder of the motion.

below, the court grants in part defendants' motion to dismiss and dismisses Slominski's third claim.

I.

Globe and United are "sister compan[ies]" that sell supplemental health insurance and life insurance. Am. Compl. [D.E. 18] ¶¶ 16–17. Defendants solicit business by cold calling potential customers. See id. at ¶¶ 19–21. Consumers complain that defendants refuse to stop calling even after the consumers request defendants stop calling. See id. at ¶¶ 27–30.

Slominski is the sole subscriber and sole user of her cell phone. See id. at ¶ 32. On April 11, 2018, Slominski registered her cell phone on the national do-not-call registry. See id. at ¶ 33. Slominski uses her cell phone "as one would use a landline telephone number in one's home." Id. In late February 2023, Slominski called United about a supplemental insurance policy. See id. at ¶ 35. United told Slominski a licensed insurance employee would call her back a few days later. See id. Shortly after Slominski's call to United, United called Slominski from phone number 844-593-8913. See id. at ¶ 36. Slominski "told the employee that she would like to cancel her request for information." Id.

Slominski alleges that, "[d]espite the cancellation of her request, . . . Slominski received a series of calls from . . . United . . . to her cell phone number." Id. at ¶ 37. Slominski "called 844-593-8913 at the end of February from her cell phone . . . and made a specific request for the calls to stop, asking to have her phone number removed from whatever list [United] was using." Id. Nonetheless, Slominski alleges she continued to receive "upwards of 10 calls per day from [both of] the Defendants to her cell phone number" even though she had "never heard of" Globe. Id. at ¶¶ 38–39. Slominski alleges she "received unsolicited calls from" Globe on "February 28, March 2, and March 3, 2023 from the phone number 214-250-5780." Id. at ¶ 41.

2

On March 13, 2023, Slominski answered a call from United and "made an additional stop request." Id. at ¶ 42. The employee told Slominski that she added Slominski to a do-not-call list. See id. On March 14, 2023, Slominski received a call from phone number 214-250-5780. See id. at ¶ 43. Slominski did not answer the call and received a "pre-recorded voicemail . . . asking [Slominski] to call [Globe] back to get an insurance plan." Id. On March 15, 2023, Slominski received a call from phone number 214-250-5518. See id. at ¶ 44. Slominski also did not answer this call and received another "pre-recorded voicemail . . . asking [Slominski] to call [Globe] back to get an insurance plan." Id. Slominski "believes that the voicemails were pre-recorded because of their generic, scripted nature, the sound of the speech and because other consumers reported similar, if not the same pre-recorded voicemails." Id. at ¶ 45; see id. at ¶ 46 (other consumers' reports).

Slominski filed this action on behalf of herself and three proposed classes: (1) all persons in the United States who, during the four years before Slominski filed this suit, received a call on their cell phone from Globe or an agent calling on behalf of Globe using an artificial or prerecorded voice message; (2) all persons in the United States who, during the four years before Slominski filed this suit, received more than one call or text from Globe within a 12-month period where the person's residential telephone number had been listed on the national do-not-call registry for at least 30 days; and (3) all persons in the United States who, during the four years before Slominski filed this suit, received more than one call from United within any 12-month period including at least once after the person requested that United stop calling or texting the person's residential telephone number. See id. at ¶¶ 50–51.

3

II.

Defendants move to dismiss for lack of personal jurisdiction. See [D.E. 22] 1; [D.E. 23] 3–7. Here, personal jurisdiction over a nonresident defendant requires compliance with North Carolina's long-arm statute and the Fourteenth Amendment's Due Process Clause. See, e.g., Mitrano v. Hawes, 377 F.3d 402, 406 (4th Cir. 2004). North Carolina's long-arm statute extends personal jurisdiction over nonresident defendants consistent with the Fourteenth Amendment's Due Process Clause. See Christian Sci. Bd. of Dirs. v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Thus, the statutory inquiry merges with the constitutional inquiry. See id.; Atl. Corp. of Wilmington, Inc. v. TBG Tech Co., 565 F. Supp. 3d 748, 759 (E.D.N.C. 2021).

Due process requires a defendant to have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414 (1984) (cleaned up). The minimum contacts analysis focuses on whether a defendant "purposefully directed his activities at residents of the forum" and whether the causes of action arise out of or relate to those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotation omitted); see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024–25 (2021). The minimum contacts analysis ensures that a defendant is not haled into a jurisdiction's court "solely as a result of random, fortuitous, or attenuated contacts." Burger King Corp., 471 U.S. at 475 (quotations omitted); see Ford Motor Co., 141 S. Ct. at 1025. The minimum contacts analysis focuses "on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014) (quotation omitted); see Ford Motor Co., 141 S. Ct. at 1024–26; Bristol-Myers Squibb Co. v. Super. Ct., 582 U.S. 255, 263–64 (2017).

4

The extent of the contacts needed for personal jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state. See Ford Motor Co., 141 S. Ct. at 1024–26; Bristol-Myers Squibb Co., 582 U.S. at 262–63; ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002); Atl. Corp. of Wilmington, Inc., 565 F. Supp. 3d at 760. In determining specific jurisdiction, the court considers: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of or relate to those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. See ALS Scan, 293 F.3d at 712. The "constitutional touchstone" of specific personal jurisdiction "remains whether the defendant purposefully established minimum contacts in the forum State." Burger King Corp., 471 U.S. at 474 (quotation omitted); see Bristol-Myers Squibb Co., 582 U.S. at 263–64; Walden, 571 U.S. at 284–91.

In determining whether the exercise of personal jurisdiction is constitutionally reasonable, a court may "consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of" the privileges of the forum state. Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009). Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social polices. See id.

When the court decides a pretrial motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction. See Hawkins v. i-TV Digitalis Tavkozlesi zrt., 935 F.3d 211, 226 (4th Cir. 2019); Sneha Media &

5

Ent., LLC v. Associated Broad. Co., 911 F.3d 192, 196–97 (4th Cir. 2018); Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). In doing so, the court construes all relevant jurisdictional allegations in the complaint in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. See Hawkins, 935 F.3d at 226; Mylan Lab'ys, 2 F.3d at 60. In that procedural posture, a plaintiff need not establish the existence of personal jurisdiction by a preponderance of the evidence. See Sneha Media & Ent., 911 F.3d at 196–97. If the court holds an evidentiary hearing concerning personal jurisdiction, plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. See id. at 197; Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016).

Globe is a Delaware corporation headquartered in Texas. See Am. Compl. ¶ 2. United also is a Delaware corporation headquartered in Texas. See id. at ¶ 3.[2] Accordingly, this court cannot exercise general personal jurisdiction over Globe or United. See Daimler AG v. Bauman, 571 U.S. 117, 122 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). Thus, the court must have specific personal jurisdiction over Globe and United.

In a TCPA case, "specific personal jurisdiction exists when it is reasonable to infer that defendant purposefully aimed its conduct at North Carolina by contacting directly plaintiff's North Carolina telephone number." Davis v. Reliance First Capital, No. 7:22-CV-18, 2023 WL 1982354, at *2 (E.D.N.C. Feb. 13, 2023) (unpublished) (cleaned up); see Jones v. Mut. of Omaha Ins. Co., 639 F. Supp. 3d 537, 550 (D. Md. 2022) ("[I]n the context of the TCPA, personal jurisdiction is

---

[2] Slominski alleges that Globe and United are Delaware corporations. See id. at ¶¶ 2–3. Defendants submitted a declaration from their Vice President of Customer Care, Paul Anderson ("Anderson"), in which Anderson declares both defendants are Nebraska corporations. See [D.E. 23-1] ¶¶ 5, 9. Whether defendants are Delaware corporations or Nebraska corporations, this court does not have general personal jurisdiction over either defendant.

6

proper in the District where an unlawful communication is received." (cleaned up)); Mey v. Castle L. Grp., 416 F. Supp. 3d 580, 586 (N.D.W. Va. 2019).

Defendants contend that their "evidence confirms" they did not call Slominski's phone. [D.E. 23] 6 (citing [D.E. 23-1] ¶¶ 8, 12). In Anderson's affidavit, he declared that Globe and United do not directly call customers. See [D.E. 23-1] ¶¶ 7, 11. Instead, Globe and United hire agents to call customers or potential customers. See id. at ¶¶ 8, 12. Defendants contend that Slominski "cannot meet her burden of identifying any suit-related conduct by Defendants that created any substantial connection with North Carolina." [D.E. 23] 7. Slominski responds that she "has offered more than speculation or conclusory assertions about contacts with" North Carolina and "is entitled to jurisdictional discovery regarding the identity of, and extent of [Globe]'s relationship with" any agent that called Slominski. [D.E. 25] 3–4 (quotation omitted). Defendants reply that Slominski's "failure to even attempt to rebut Defendants' evidence confirms that personal jurisdiction cannot exist based on [Slominski]'s incorrect assertion that Defendants 'called into' North Carolina." [D.E. 26] 2.

"[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson, 816 F.3d at 268 (emphasis added); see Mylan Lab'ys, 2 F.3d at 60, 62; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). In this procedural posture, the court construes all relevant jurisdictional allegations in the complaint in the light most favorable to the plaintiff and draws the most favorable inferences for the existence of jurisdiction. See Hawkins, 935 F.3d at 226; Mylan Lab'ys, 2 F.3d at 60.

7

Slominski alleges that she received unsolicited calls in the Eastern District of North Carolina from Globe on February 28, March 2, and March 3, 2023, from the phone number 214-250-5780. See Am. Compl. ¶¶ 5, 33, 41. Slominski alleges that on March 14, 2023, she received another phone call and voicemail message from the same phone number "asking [Slominski] to call [Globe] back to get an insurance plan." Id. at ¶ 43. Slominski alleges that on March 15, 2023, she received another phone call and voicemail message from a different phone number that asked Slominski "to call [Globe] back to get an insurance plan." Id. at ¶ 44. Anderson declares that defendants do not call potential customers directly. See [D.E. 23-1] ¶¶ 7, 11. Crediting Slominski's allegations as true and viewing the evidence in the light most favorable to her, she has alleged prima facie specific jurisdiction. See, e.g., Mylan Lab'ys, 2 F.3d at 62 ("[Plaintiff's] assertions carry the same quantum of trustworthiness as [defendant's] sworn affidavit. Construing both documents in the light most favorable to [plaintiff], we believe that the district court erred in resolving the matter . . . in [defendant's] favor.").

Alternatively, and in any event, Anderson's declaration provides no comfort to defendants. "[T]he Federal Communications Commission (the 'FCC') has authorized vicarious liability for violations of the TCPA." Jones, 639 F. Supp. 3d at 550; see In re Joint Pet. Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6584 (2013) ("Dish Network"). "Vicarious liability plays an essential role in enforcing the TCPA" because sellers "are in the best position to monitor and police TCPA compliance by third-party telemarketers." Bradley v. DentalPlans.com, 617 F. Supp. 3d 326, 338 (D. Md. 2022) (quotation omitted); see Dish Network, 28 FCC Rcd. at 6588. Otherwise, "sellers could avoid potential liability by outsourcing [their] telemarketing activities to unsupervised third parties who are often judgment proof, unidentifiable, or located outside the United States." Bradley, 617 F. Supp. 3d at 338 (quotation omitted); see Dish Network, 28 FCC Rcd. at 6588.

Anderson declared that defendants "contract[] with independent agents, who may place calls to potential customers to inquire about insurance policies." [D.E. 23-1] ¶ 8; see id. at ¶ 12. Thus, when coupled with Slominski's allegations, defendants' evidence supports this court's exercise of specific personal jurisdiction over defendants. Accordingly, the court denies defendants' motion to dismiss for lack of personal jurisdiction. See, e.g., Mey v. Matrix Warranty Sols., Inc., No. 5:21-CV-62, 2021 WL 11421819, at *4–6 (N.D.W. Va. Sept. 2, 2021) (unpublished); Hicks v. Houston Baptist Univ., No. 5:17-CV-629, 2019 WL 96219, at *4 (E.D.N.C. Jan. 3, 2019) (unpublished).

As for defendants' motion to dismiss for failure to state a claim, a motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

9

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Id. (quotation omitted); see Fayetteville Invs. v. Com. Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The TCPA prohibits, inter alia, a person or entity from "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii); see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 373–74 (2012); Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 644–45 (4th Cir. 2018); Davis v. Safe Streets USA LLC, 497 F. Supp. 3d 47, 55 (E.D.N.C. 2020). The TCPA's implementing regulations also prohibit, inter alia, a person or entity from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry" and from "initiat[ing] . . . any call for

10

telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(c)–(d). The TCPA provides that a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may . . . bring in an appropriate court . . . an action based on violation of the regulations prescribed under this subsection to enjoin such violation, . . . an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or . . . both." 47 U.S.C. § 227(c)(5).

In her first claim, Slominski alleges Globe made "pre-recorded voice calls . . . en masse without the prior express written consent of" Slominski and members of one of her proposed subclasses in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Am. Compl. ¶¶ 59–60. "To state a claim under Section 227(b)(1)(A)(iii) of the TCPA, a plaintiff must allege: (1) that the defendant initiated a telephone call to a cellular phone number (2) using an artificial or prerecorded voice to deliver a message, (3) without prior express consent of the called party." Connor v. Priority Concepts, Inc., No. 2:23-cv-3726, 2024 WL 199138, at *2 (D.S.C. Jan. 18, 2024) (unpublished); see Drake v. Synchrony Bank, Civ. No. 19-2134, 2023 WL 6621345, at *2 (D. Md. Oct. 11, 2023) (unpublished); Hossfeld v. Gov't Emps. Ins. Co., 88 F. Supp. 3d 504, 509 (D. Md. 2015).

Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her cell phone that asked her to call Globe. See Am. Compl. ¶¶ 43–44. The voicemail messages concerned "an insurance plan." Id. Globe sells insurance plans. See id. at ¶ 17. Slominski received these calls and messages without her consent. See id. at ¶¶ 39, 47. Slominski alleges she "believes that the voicemails were pre-recorded because of their generic, scripted

11

nature, the sound of the speech and because other consumers reported similar, if not the same prerecorded voicemails." Id. at ¶ 45.

Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. See [D.E. 23] 8–9. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss. See Am. Compl. ¶¶ 17, 43, 44; see, e.g., Sojka v. DirectBuy, Inc., 35 F. Supp. 3d 996, 999–1000 (N.D. Ill. 2014); cf. Aaronson v. CHW Grp., Inc., No. 1:18-cv-1533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) (dismissing plaintiff's TCPA claim because, in relevant part, plaintiff failed to allege facts about the calls that would attribute the calls to the defendant, such as "how the caller identified itself" or "a statement by the caller that he or she was marketing defendant's goods or services").

As for the second element, courts diverge on the governing standard for a plaintiff's allegations to survive a motion to dismiss. See Sojka, 35 F. Supp. 3d at 1001–03 (describing the divergence and collecting cases).[3] Under the easier standard, "merely . . . alleging that a defendant

---

[3] Defendants contend that in Slominski's opposition, she "fail[ed] to respond altogether" to defendants' argument that Slominski "does not sufficiently allege that the voicemails she received were prerecorded." [D.E. 26] 4–5. Thus, defendants argue Slominski has abandoned her first claim against Globe. See id.

The court does not read defendants' memorandum to specifically argue that Slominski fails to plausibly allege that the voicemail messages she received were prerecorded. See [D.E. 23] 8–9. To the extent defendants implicitly made that argument, Slominski's response sufficed. See [D.E. 25] 1–2. To the extent defendants did not make that argument in their original memorandum, "new arguments cannot be raised in a reply brief before the district court." De Simone v. VSL Pharms., Inc., 36 F.4th 518, 531 (4th Cir. 2022) (quotation omitted); see United States v. Smalls, 720 F.3d 193, 197 (4th Cir. 2013); United States v. Ballard, ___ F. Supp. 3d ___, 2023 WL 8946800, at *18 (E.D.N.C. Dec. 27, 2023). Accordingly, the court rejects this argument. Regardless, defendants move to dismiss this claim. Hence, the court considers whether Slominski plausibly alleges enough facts to support every element of her claim. See, e.g., Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 764–65 (4th Cir. 2003); Inman v. Klockner-Pentaplast of Am., Inc., 467 F. Supp. 2d 642, 646–47 (W.D. Va. 2006).

12

used an artificial or prerecorded voice suffices at the pleading stage." Id. at 1002 (quotation omitted). Slominski alleges Globe left prerecorded voicemail messages on her phone. See Am. Compl. ¶¶ 43–44. Accordingly, Slominski's allegations survive this pleading standard. See, e.g., Connor, 2024 WL 199138, at *2; Duarte v. Truist Bank, No. 3:20-CV-270, 2020 WL 6528073, at *2 (W.D.N.C. Nov. 5, 2020) (unpublished) (denying defendant's motion to dismiss a TCPA claim where plaintiff alleged "Defendant called Plaintiff and delivered prerecorded or artificial voice messages" (quotation omitted)).

Under "the stricter pleading standard," a TCPA claim survives a motion to dismiss if the plaintiff "describe[s] anything about the circumstances of a call or message contributing to [her] belief it was pre-recorded." Sojka, 35 F. Supp. 3d at 1003 (cleaned up); see Johansen v. Vivant, Inc., No. 12 C 7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012) (unpublished). Slominski alleges that she believed the voicemail messages were prerecorded based on "their generic, scripted nature" and "the sound of the speech." Am. Compl. ¶ 45. These allegations suffice to meet the stricter pleading standard. See, e.g., Somogyi v. Freedom Mortg. Corp., Civ. No. 17-6546, 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018) (unpublished); cf. Rallo v. Palmer Admin. Servs., Inc., No. 18-cv-1510, 2019 WL 1468411, at *2–3 (D. Colo. Apr. 3, 2019) (unpublished).

Next, defendants cite Hicks v. Alarm.com Inc., No. 1:20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (unpublished), and contend that Slominski's allegations are contradictory because she relies on reports of other voicemail messages listed on YouMail.com. See [D.E. 26] 5–6. Slominski cites anonymous consumer reports of "similar, if not the same pre-recorded voicemails" to the ones she received. Am. Compl. ¶¶ 45–46. Each of the messages Slominski cites slightly differ from one another. See id. at ¶ 46. In Hicks, the court considered similar allegations and held that the plaintiff failed to state a claim under section 227(b) in part because

13

the YouMail.com messages contradicted plaintiff's allegations that the calls were prerecorded or generic. See Hicks, 2020 WL 9261758, at *5.

In Hicks, the YouMail.com messages were almost totally different from one another and sometimes pertained to different companies altogether. See id. (citing YouMail, Reverse phone number lookup, https://directory.youmail.com/phone/954-507-9334 (last visited Feb. 12, 2024)). By contrast, the messages Slominski cites are very similar to one another and appear to all come from Globe. See Am. Compl. ¶ 46. Accordingly, unlike in Hicks, the reports Slominski cites do not contradict her allegations. Thus, the court denies defendants' motion to dismiss Slominski's first claim.

In her second claim, Slominski alleges Globe called Slominski and members of one of her proposed subclasses despite Slominski and the putative class members registering "their respective telephone numbers on the National Do Not Call Registry" in violation of 47 C.F.R. § 64.1200(c) and 47 U.S.C. § 227(c)(5). Am. Compl. ¶¶ 61–66. Slominski must plausibly allege that her phone number was on the national do-not-call registry and that Globe called her at least twice in a year. See Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 655 (4th Cir. 2019); Nickson v. Advanced Mktg. & Processing, Inc., Civ. No. 22-2203, 2023 WL 4932879, at *6 (D. Md. Aug. 2, 2023) (unpublished).

Slominski alleges that she "registered her cell phone on the [national do-not-call registry] on April 11, 2018." Am. Compl. ¶ 33. Slominski alleges she "received unsolicited calls from Defendant Globe Life on February 28, March 2, and March 3, 2023." Id. at ¶ 41. Slominski alleges that on March 14 and March 15, 2023, she received two unsolicited calls and voicemail messages asking Slominski to call Globe back to get an insurance plan. See id. at ¶¶ 43–44.

14

Slominski alleges that, at the time of the calls, she "had never heard of" Globe and had "never provided consent to" Globe to call her. Id. at ¶¶ 39, 47.

Defendants contend that Slominski does not plausibly allege "any facts to explain or elaborate her basis for believing these calls came from [Globe], and there is no information about the alleged calls or voicemails from which the court could find that [Globe] plausibly placed these calls." [D.E. 23] 9. As discussed, Slominski plausibly alleges Globe called her at least twice, on March 14 and March 15, 2023. For those calls, Slominski alleges that she let the callers leave voicemail messages, and the callers asked Slominski to "call Globe Life back." Am. Compl. ¶ 43; see id. at ¶ 44. Moreover, Slominski alleges that Globe "sells supplemental health insurance and life insurance" and the voicemail messages concerned "insurance plan[s]." Id. at ¶¶ 17, 43, 44. Accepting Slominski's allegations as true and drawing all reasonable inferences in her favor, Slominski plausibly alleges a claim against Globe under 47 C.F.R. § 64.1200(c). See, e.g., Sojka, 35 F. Supp. 3d at 999–1000. Accordingly, the court denies defendants' motion to dismiss Slominski's second claim.

In her third claim, Slominski alleges United called Slominski and members of one of her proposed subclasses "without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow [United] to initiate telemarketing calls" in violation of 47 C.F.R. § 64.1200(d) and 47 U.S.C. § 227(c)(5). Am. Compl. ¶¶ 67–71. Slominski must plausibly allege United called her at least twice in a year and these calls indicate United "did not implement the procedures outlined in 47 C.F.R. § 64.1200(d), including maintaining an internal do-not-call list." Fischman v. MediaStratX, LLC, No. 2:20-CV-83, 2021 WL 3559639, at *6 (E.D.N.C. Aug. 10, 2021) (unpublished). When a callee asks to be put on an internal do-not-call list, a caller "must

15

honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made," not to exceed "30 days from the date of such request." 47 C.F.R. § 64.1200(d)(3).

In late February 2023, Slominski alleges she initially consented to United calling her. See Am. Compl. ¶¶ 35–36. After Slominski "received a series of calls from" United, Slominski "made a specific request for the calls to stop, asking to have her phone number removed from whatever list [United] was using." Id. at ¶ 37. Slominski alleges she continued to receive calls from both defendants, but she provides no details about any other calls from United except one: on March 13, 2023, Slominski answered a call from United and "made an additional stop request." Id. at ¶ 42. Slominski does not allege any more calls from United.

Defendants contend Slominski fails to state a claim because she alleges United stopped calling Slominski within 30 days of her stop request. See [D.E. 23] 11–12; 47 C.F.R. § 64.1200(d)(3); see also Am. Compl. ¶¶ 37, 42. The regulation required United to honor Slominski's request "within a reasonable time" after Slominski made her request. 47 C.F.R. § 64.1200(d)(3). Whether United put Slominski "on the Do-Not-Call list within a 'reasonable time' is a question of fact best left for development in discovery." Boger v. Citrix Sys., Inc., Civ. No. 8:19-cv-1234, 2020 WL 1033566, at *5 (D. Md. Mar. 3, 2020) (unpublished). Slominski plausibly alleges that United acted unreasonably in continuing to call Slominski for approximately two weeks after she asked to be placed on a do-not-call list. See, e.g., Nece v. Quicken Loans, Inc., No. 8:16-cv-2605, 2018 WL 1326885, at *6–7 (M.D. Fla. Mar. 15, 2018) (unpublished) (describing the regulations at issue and holding a "jury might find unreasonable the persistence of [defendant's] calls for a week" after plaintiff made a do-not-call request). Accordingly, the court rejects defendants' argument.

16

Next, defendants contend Slominski fails to plausibly allege facts supporting her third claim. See [D.E. 23] 10–11. Slominski conclusorily alleges she "received upwards of 10 calls per day from the Defendants to her cell phone number" after she first asked United to put her on a do-not-call list. Am. Compl. ¶ 38. Slominski, however, does not allege when these calls occurred, what the content of the calls or voicemail messages was, or even which defendant made the alleged calls. By contrast, in Fischman, the plaintiff alleged the dates of, frequency of, and phone numbers associated with several of the alleged calls. See Fischman v. MediaStratX, LLC, No. 2:20-cv-83, [D.E. 1] ¶¶ 34–45; see also Fischman, 2021 WL 3559639, at *6 (holding "Fischman has plausibly alleged a violation of section 64.1200(d)"). Slominski plausibly alleges just one call from United after she asked to be placed on an internal do-not-call list. See Am. Compl. ¶ 42; see also 47 U.S.C. 227(c)(5) (a plaintiff must allege "more than one telephone call" in violation of the applicable regulations to bring a claim). Accordingly, the court grants defendants' motion to dismiss Slominski's third claim. See, e.g., Nickson, 2023 WL 4932879, at *7.

### III.

In sum, the court GRANTS IN PART defendants Globe Life Inc. and United's motion to dismiss [D.E. 12], GRANTS IN PART defendants Globe and United's motion to dismiss [D.E. 22], DISMISSES defendant Globe Life Inc. from this action, and DISMISSES WITHOUT PREJUDICE plaintiff's 47 C.F.R. § 64.1200(d)(3) claim.

SO ORDERED. This 12 day of February, 2024.

JAMES C. DEVER III
United States District Judge